```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/31/2019
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
CRT CAPITAL GROUP LLC, :
:
                             Petitioner :
: 18-CV-3986 (VSB)
        -against- :
: **OPINION & ORDER**
SLS CAPITAL, S.A., Through Maitre Yann :
Baden, Liquidator, and FINANCIAL :
INDUSTRY REGULATORY AUTHORITY, :
INC., :
:
                            Respondents. :
:
------------------------------------------------------------X

Appearances:

Nancy Eileen Delaney
Daniel Thomas Banaszynski
Curtis, Mallet-Prevost, Colt & Mosle, LLP
New York, New York
*Counsel for Petitioner*

Adrienne May Hollander
Allen Gary Reitner
Arent Fox LLP
New York, New York
*Counsel for Respondent*

VERNON S. BRODERICK, United States District Judge:

        Petitioner CRT Capital Group LLC ("Petitioner" or "CRT") commenced this action

against Respondent SLS Capital, S.A. ("Respondent" or "SLS")[1] to confirm the arbitration

award and enter judgment in CRT's favor under the Federal Arbitration Act ("FAA"), 9 U.S.C.

§§ 1, et seq. (*See* Doc. 1.) SLS opposed the petition and filed a cross-petition to vacate the

---

[1] The petition also named the Financial Industry Regulatory Authority, Inc. as a Respondent, which was voluntarily dismissed without prejudice on May 31, 2018. (Doc. 23.)

award. (Docs. 31–32.) For the reasons that follow, CRT's petition is GRANTED and SLS's cross-petition is DENIED.

I. **Background**

David Elias formed SLS, a Luxembourg Société Anonyme. (Buckley Decl. ¶ 3; 5/30/18 Delaney Decl. Ex. E.)[2] CRT was the majority owner of SLS. (Buckley Decl. ¶ 3.) On March 15, 2005, SLS also retained CRT to serve as its advisor, pursuant to an engagement letter ("Engagement Letter"). (*See* 5/3/18 Delaney Decl. Ex. B.)[3] Approximately thirty months later, CRT sold its majority interest in SLS to Elias, who subsequently stole over $100,000,000 of its assets. (*See* Buckley Decl. ¶ 4.)

The District Court of Luxembourg ordered the liquidation and winding up of SLS, (*see* 5/3/18 Delaney Decl. Ex. C), and Me Baden, the court-appointed liquidator, ("Liquidator"), commenced a Chapter 15 bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). *See In re SLS Capital, S.A.*, No. 12-12707 (Bankr. S.D.N.Y. June 25, 2012) (Docket Entry 2). The Bankruptcy Court authorized the Liquidator to take depositions and document discovery related to causes of action belonging to SLS against CRT, (*see* 5/3/18 Delaney Decl. Ex. D), and, on July 15, 2014, the Liquidator filed a statement of claim with the Financial Industry Regulatory Authority ("FINRA"), on behalf of SLS and its shareholders against CRT, pursuant to the Engagement Letter's arbitration provision, (*see* 5/3/18 Delaney Decl. Ex. A; *see also id.* Ex. B). The statement of claim was later amended to name two of CRT's former employees, Michael McCarty and Robert Gibson, as additional

---

[2] "Buckley Decl." refers to the Declaration of Thomas Buckley in Opposition to Confirmation of the Arbitration Award and in Support of Respondent's Petition to Vacate the Arbitration Award, dated June 27, 2018. (Doc. 34.) "5/30/18 Delaney Decl." refers to the Supplemental Declaration of Nancy E. Delaney in Support of Petition to Confirm Arbitral Award, dated May 30, 2018. (Doc. 22.)

[3] "5/3/18 Delaney Decl." refers to the Declaration of Nancy E. Delaney in Support of Petition to Confirm Arbitral Award, dated May 3, 2018. (Doc. 5.)

respondents. (*See id.* Ex. A.)

After the parties submitted rankings of potential arbitrators, (5/30/18 Delaney Decl. Ex. A), FINRA appointed a three-person panel to hear the claims ("Panel"), (*see id.* Ex. B).[4] Pursuant to the FINRA Rules, CRT requested that the Panel provide an "explained decision," (5/3/18 Delaney Decl. Ex. E), but SLS did "not agree to CRT's request for an explained decision," (*id.* Ex. F), which meant that intermediate and final decisions from the Panel were to be provided without explanation. In the initial pre-hearing conference scheduling order, the Panel scheduled ten total hearing dates—SLS requested five days to present its case and CRT requested five days to respond. (7/27/18 Delaney Decl. Ex . A; *see also* CRT's Reply 5.)[5] After two days of testimony from SLS's first witness, CRT objected and requested that the Panel impose time limits on SLS's case-in-chief. (7/27/18 Delaney Decl. Ex. E, at 481:19–482:4.) The chairperson of the Panel ("Panel Chairperson" or "Chairperson") denied the request, stating, "I am not going to put in any time limits. It's your case, you try your case how you would like." (*Id.* at 482:14-17.) Ultimately, SLS called twelve witnesses over twenty-five hearing days, including testimony from each of its four designated experts. (*See* CRT's Reply 6; *see also* 7/27/18 Delaney Decl. Ex. C.)

Although Robert Gibson was a former CRT employee, SLS called him to testify as part of its case-in-chief. (8/24/18 Hollander Decl. Ex. A, at 3829:18-23.)[6] Despite calling Gibson as

---

[4] During the course of the hearing, certain panel members resigned and were replaced. The three-person panel that ultimately rendered a decision consisted of Keely Parr, Denise Seegobin, and Paul B. Marrow. (*See* 5/30/18 Delaney Decl. Exs. B–D.)

[5] "7/27/18 Delaney Decl." refers to the Third Supplemental Declaration of Nancy E. Delaney in Support of Petition to Confirm Arbitral Award, dated July 27, 2018. (Doc. 46.) "CRT's Reply" refers to the Reply Memorandum of Petitioner CRT Capital Group LLC in Further Support of the Petition to Confirm Arbitral Award and in Opposition to Respondent's Cross-Petition to Vacate the Award, dated July 27, 2018. (Doc. 45.)

[6] "8/24/18 Hollander Decl." refers to the Reply Declaration of Adrienne M. Hollander in Further Support of Respondent's Petition to Vacate the Arbitration Award, dated August 24, 2018. (Doc. 51.)

3

its witness, SLS requested that the Panel permit testimony from one of its experts, Steve Boger, before CRT put on its case, specifically to rebut Gibson's testimony. (*Id.* at 3829:18–3830:2.) The Panel Chairperson instructed SLS that it could not proffer any rebuttal experts until after CRT had put on its case, and that SLS could "make the request at the end of [CRT]'s case . . . ." (*Id.* at 3830:6-20.)

One expert, Kathleen Birrane, SLS's primary liability expert, provided five days of testimony. (7/27/2018 Delaney Decl. Ex. H, at 6093:18-21; *see also* 7/27/18 Delaney Decl. Ex. C (identifying Birrane as a witness); *id.* Ex. V, at 2 n.3 (listing the dates on which Birrane testified.)) Several weeks after Birrane had completed her testimony, CRT learned that SLS had failed to disclose over 30,000 pages of documents, which "contained information directly contradicting some of Birrane's opinions." (*See* 7/27/19 Delaney Decl. Ex. V, at 2.) As a result, on November 11, 2016, CRT filed a letter motion to strike Birrane's expert report and testimony and to dismiss SLS's claims in their entirety. (*See id.*) Both parties were then given the opportunity to brief the issue.

On November 18, 2016, before CRT had closed its case, and notwithstanding the Panel's instructions that SLS wait until after CRT had closed its case before submitting a request to proffer rebuttal experts, SLS submitted a letter notifying the Panel that "SLS . . . will put on its rebuttal witnesses Steve Boger, whose rebuttal testimony will be expert, and a rebuttal expert (to be named) . . . ." (*See* 06/27/18 Hollander Decl. Ex. 12.)[7] CRT objected to SLS's declaration, submitting a letter to the Panel on November 22, 2016 requesting that SLS only be able to present rebuttal testimony after filing a motion demonstrating good cause, as required both by

---

[7] "06/27/18 Hollander Decl." refers to the Declaration of Adrienne M. Hollander in Opposition to Confirmation of the Arbitration Award and in Support of Respondent's Petition to Vacate the Arbitration Award, dated June 27, 2018. (Doc. 33.)

4

the FINRA rules and by the Panel's earlier ruling specifically addressing a request to proffer Boger as a rebuttal expert. (*See* 7/27/18 Delaney Decl. Ex. V.) Once again, the Panel ruled that SLS could request permission to call rebuttal witnesses "[a]fter the close of [CRT]'s case-in-chief," and required that any request include a "good cause showing in accordance with FINRA Rule 12514(c)." (*See* 06/27/18 Hollander Decl. Ex. 13.)

With regard to Birrane's report and testimony, on January 18, 2017, after permitting briefing and hearing oral argument on CRT's motion to strike, the Panel unanimously struck Birrane's report and her testimony about the report in their entirety, made an adverse inference against SLS "for its failure to supplement and failure to disclose," and ordered SLS to pay CRT's legal fees associated with the motion to strike and the cross-examination of Birrane. (*See* 5/30/2018 Delaney Decl. Ex. H, at 6096:9-15; *see also* 5/3/2018 Delaney Decl. Ex. A, at 5.)

The Panel scheduled closing arguments for January 19, 2016, (*see* 7/27/2018 Delaney Decl. Ex. Y, at 6099:2-4), but on January 17, 2016, SLS made a last-minute request to call rebuttal experts, (*see id.* at 6106:6-8, 6109:25–6110:2; *see also* 06/27/18 Hollander Decl. Ex. 15). Notwithstanding the late request, the Panel adjourned closing arguments and set a briefing schedule to ensure that the motion for rebuttal experts received the "weight that it deserves." (*See id.* at 6111:25–6112:7.) SLS's January 17, 2016 request to call rebuttal experts was a four-page letter motion with fourteen pages of exhibits. (*See* 06/27/18 Hollander Decl. Ex. 15.) CRT submitted its seventeen-page opposition with twelve exhibits to the Panel ten days later, on January 27, 2017. (*See id.* Ex. 29.)[8] On February 1, 2017, SLS submitted its reply, an eighteen-page letter brief with approximately 400 pages of exhibits attached. (*See id.* Ex. 28.) On March 17, 2017, "having reviewed all of the papers submitted by the parties," and " having reviewed all

---

[8] CRT's exhibits are not included in Exhibit 29.

5

of the case law submitted by the parties," the Panel denied SLS's motion. (06/27/18 Hollander Decl. Ex. 24.) No Panel member dissented from the decision. (*Id.*)

Based on language in the Engagement Letter, CRT requested indemnification from SLS for CRT's attorneys' fees and costs. On June 13, 2017, the Panel ordered CRT to provide an invoice for legal fees in support of its request. (6/27/18 Hollander Decl. Ex. 19.) CRT provided an invoice on June 22, 2017, requesting $6,760,816.11. (*Id.* Ex. 23, at 3.) In response, the Panel ordered briefing on the "standard under New York law for assessing the reasonableness of attorney's fees in the context of indemnification" and whether the Panel had the authority "to award legal fees for services rendered outside of this arbitration[.]" (*Id.* Ex. 21.) Each party submitted a brief on September 22, 2017. (*Id.* Exs. 22–23.)

On March 29, 2018, the Panel issued its arbitration award ("Award"), which denied SLS's claims in their entirety and awarded to CRT "indemnification damages in the amount of $4,256,667.29 which includes costs and fees." (*Id.* Ex. 1.) Consistent with SLS's earlier objection and insistence, the Award was unexplained. (*See* 5/3/18 Delaney Decl. Ex. G (SLS reaffirming that it "specifically declined to make a joint request for an informed decision under FINRA Rule 1214(d)").) One of the Panel members, Paul Bennet Marrow, issued a fifty-three-page dissent. (*See* 6/27/18 Hollander Decl. Ex. 1, at 10–63.)

## II. **Procedural History**

On May 3, 2018, CRT commenced this action by filing its petition to confirm the Award, naming both SLS and FINRA as Respondents. (Doc. 1.) On May 29, 2018, CRT and FINRA filed a notice, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), that the action had

been dismissed against FINRA. (Docs. 18, 23.)[9] On May 30, CRT filed a memorandum and declaration in support of its petition. (Docs. 21–22.) On June 27, 2018, SLS filed a response to CRT's petition, (Doc. 30), a cross-petition to vacate Award, (Docs. 31–32), and a memorandum and several declarations in support of its cross-petition, (Docs. 33–37). On July 27, 2018, CRT filed its response to the cross-petition, (Doc. 44), as well as a memorandum and declaration in further support of the petition to confirm the Award and in opposition to SLS's cross-petition to vacate the Award, (Docs. 45–46). SLS filed a reply and a declaration in support on August 24, 2018. (Docs. 50–51.) On December 4, 2018, SLS filed a letter in further support of their cross-motion, (Doc. 54), and CRT responded on December 7, 2018, (Doc. 55).

### III. **Legal Standard**

The FAA provides a "streamlined" process for a party seeking "a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." *Hall St. Assocs. L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). In reviewing an arbitration award, a federal district court "can confirm and/or vacate the award, either in whole or in part." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006). Specifically, under § 9 of the FAA, "a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11." *Hall St. Assocs.*, 552 U.S. at 582 (quoting 9 U.S.C. § 9). "Normally, confirmation of an arbitration is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" *D.H. Blair & Co.*, 462 F.3d at 110 (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)). "A court may decide the merits of a petition to confirm or vacate an arbitration award 'based solely on the papers submitted by the parties in support of their motions.'" *Companion Prop. & Cas. Ins. Co. v.*

---

[9] Due to a filing error, the notice was refiled on May 31, 2018. (Doc. 23.)

7

*Allied Provident Ins., Inc.*, No. 13-cv-7865, 2014 WL 4804466, at *2 (S.D.N.Y. Sept. 26, 2014) (quoting *Productos Mercantiles E Industriales, S.A. v. Faberge USA*, 23 F.3d 41, 46 (2d Cir. 1994)). The party challenging an arbitration award must demonstrate "that the award falls within a very narrow set of circumstances delineated by statute and case law." *Leeward Constr. Co. v. Am. Univ. of Antigua-Coll. of Med.*, 826 F.3d 634, 638 (2d Cir. 2016) (quoting *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003)); *see Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) (holding that a party seeking vacatur of an arbitrator's decision "must clear a high hurdle").

"The role of a district court in reviewing an arbitration award is 'narrowly limited' and 'arbitration panel determinations are generally accorded great deference under the [FAA].'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 103 (2d Cir. 2013) (quoting *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 19 (2d Cir. 1997)). "This deference promotes the 'twin goals of arbitration, namely settling disputes efficiently and avoiding long and expensive litigation.'" *Id.* (quoting *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 405 (2d Cir. 2009)). "Consequently, the burden of proof necessary to avoid confirmation of an arbitration award is very high, and a district court will enforce the award as long as 'there is a barely colorable justification for the outcome reached.'" *Id*. at 103–04 (quoting *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008)). Thus, even if the court is convinced that "the arbitrator committed serious error, the award should not be vacated so long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Supreme Oil Co. v. Abondolo*, 568 F. Supp. 2d 401, 406 (S.D.N.Y. 2008) (internal quotation marks omitted).

## IV. Discussion

### A. *Exclusion of Rebuttal Expert Testimony*

SLS argues that the Panel's decision to exclude the rebuttal testimony of Boger and Michael Crane resulted in severe prejudice and warrants vacatur under § (10)(a)(3) of the FAA. (*See* SLS's Opp'n 15–19.)[10] Section 10(a) of the FAA sets forth four situations in which a court may vacate an arbitration award, including, "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy," 9 U.S.C. § 10(a)(3). CRT argues that the Panel properly declined to hear the purported rebuttal testimony of Boger and Crane because, among other things, such testimony was being offered to "evade the sanctions imposed on SLS for withholding exculpatory documents and presenting materially false testimony." (CRT's Reply 13.)

The Second Circuit has limited a court's review under § 10(a)(3) to "determining whether the procedure was fundamentally unfair." *Tempo Shain,* 120 F.3d at 20 (quoting *Teamsters, Local Union 657 v. Stanley Structures, Inc.*, 735 F.2d 903, 906 (5th Cir. 1984)). SLS relies primarily on *Tempo Shain*, in which the Second Circuit vacated an award because the arbitration panel denied a request to stay proceedings after a party's fact witness, who would have provided "crucial testimony," became "temporarily unavailable to testify . . . after his wife was diagnosed with a recurrence of cancer." *Id.* at 17–18. Although it noted that "[u]ndue judicial intervention would inevitably judicialize the arbitration process," the Second Circuit nonetheless vacated the award because it found "that there was no reasonable basis for the arbitration panel to determine

---

[10] "SLS's Opp'n" refers to the Respondent's Memorandum of Law in Opposition to Confirmation of the Arbitration Award and in Support of Its Petition to Vacate the Arbitration Award, dated June 27, 2018. (Doc. 37.)

9

that [the witness's] omitted testimony would be cumulative with regard to the fraudulent inducement claims." *Id.* at 19, 20.

As an initial matter, this case is distinguishable from *Tempo Shain* because SLS "does not, and could not, argue that the Panel refused to postpone the hearing—because it did postpone the hearing," *Doscher v. Sea Port Grp. Sec., LLC*, No. 15-CV-384 (JMF), 2017 WL 6061653, at *3 (S.D.N.Y. Dec. 6, 2017) (internal quotation marks omitted), *aff'd*, 752 F. App'x 102 (2d Cir. 2019), to ensure that SLS's motion for rebuttal testimony received the "weight that it deserve[d,]" (06/27/18 Hollander Decl. Ex. 15, at 6111:25–6112:7). SLS also cannot "contend that the Panel refused to hear evidence pertinent and material to the controversy," *Doscher*, 2017 WL 6061653, at *3 (internal quotation marks omitted), because the Panel heard from twelve of SLS's witnesses over twenty-five hearing days—including testimony from one of the witnesses SLS intended to call on rebuttal—and accepted hundreds of exhibits into evidence, (*see* 7/27/18 Delaney Decl. Ex. B). Indeed, the Panel gave SLS an extensive and meaningful opportunity— both in terms of time and substance—to present its evidence. The hearing had been scheduled by the Panel—after consulting with the parties—to last ten days. Then, after two days of testimony from SLS's first witness, CRT requested that the Panel impose time limits on SLS's case-in-chief. (7/27/18 Delaney Decl. Ex. E, at 481:19–482:4.) The Panel denied this request; specifically, the Chairperson, stated "I am not going to put in any time limits. It's your case, you try your case how you would like." (*Id.* at 482:14-17.)

Instead, SLS argues that the Panel did not have a reasonable basis for excluding the rebuttal testimony, which was SLS's "only effective way to rebut [CRT's] version of events," and therefore must be excluded under *Tempo Shain*. (SLS's Opp'n 15–16.) I disagree. The Panel did not provide a written opinion setting forth the basis justifying its decision, (*see*

10

06/27/18 Hollander Decl. Ex. 24),[11] but I have reviewed the parties' submissions to the Panel regarding SLS's rebuttal motion, and I find that the Panel had a reasonable basis to exclude the proposed rebuttal testimony. Relying on the FINRA rules, the Panel's previous rulings, and relevant case law, CRT presented five arguments to the Panel in opposition to SLS's motion: (1) the motion was a "transparent and improper attempt to correct deficiencies in SLS's case-in-chief" because it did not "identify any new facts or opinions introduced by CRT during its defense . . . that were not already well known to SLS"; (2) the motion sought "to subvert the Panel's previous decision to strike the expert report and testimony of Kathleen Birrane"; (3) the motion "incorrectly presume[d] that SLS [was] entitled to 'offer evidence to rebut' CRT's rebuttal expert"; (4) "SLS fail[ed] to explain why the testimony it proffer[ed] constitute[d] impeachment evidence"; and (5) the motion relied on "SLS's baseless contention that the proceedings" were "'replete with uneven handedness and lack of fairness.'" (06/27/19 Hollander Decl. Ex. 29, at 1–2 (quoting *id.* Ex. 28).) Notwithstanding SLS's arguments to the contrary, (*see id.* Ex. 28), each of these arguments independently provides a "reasonable basis" for the exclusion of the rebuttal testimony. I need not consider the relative strength of each argument, because "[a]rbitrators have substantial discretion to admit or exclude evidence." *LJL 33rd St. Assocs., LLC v. Pitcairn Props. Inc.*, 725 F.3d 184, 195 (2d Cir. 2013). In any event, it is SLS's burden and, as discussed below, they have woefully failed to meet it.

To demonstrate that the Panel engaged in the type of misconduct contemplated by § 10(a)(3), SLS "must show that [its] *right to be heard has been grossly and totally blocked.*" *Oracle Corp. v. Wilson*, 276 F. Supp. 3d 22, 29 (S.D.N.Y. 2017) (internal quotation marks

---

[11] Although SLS criticizes the Panel's "unexplained refusal to permit" rebuttal testimony, I note that the lack of explanation was at the express direction of SLS, which refused to join in CRT's request for an "explained decision." (*See* 5/3/18 Delaney Decl. Exs. E–G.)

11

omitted). Here, SLS not only had a fair opportunity to present its case-in-chief without limit on hearing days, witnesses, or exhibits, the Panel also fairly considered its motion to proffer expert rebuttal testimony, postponing closing arguments by two months to accommodate SLS's eleventh-hour request and set a briefing schedule. *See supra* Part II. Moreover, the "exclusion of additional expert witnesses from [a challenging party's] rebuttal case cannot be analogized to the exclusion of a party's principal fact witness." *Fid. Brokerage Servs. LLC v. Deutsch*, No. 17 Civ. 5778 (NRB), 2018 WL 2947972, at *7 (S.D.N.Y. May 31, 2018), *aff'd*, No. 18-1774, 2019 WL 1177881 (2d Cir. Mar. 13, 2019).

In light of the fair opportunity SLS had to present evidence that was "material and pertinent," and after considering CRT's five arguments to the Panel in opposition to SLS's motion each of which constituted a reasonable basis for excluding the rebuttal testimony, I find that the exclusion did not "amount[] to fundamental unfairness and misconduct sufficient to vacate the arbitration award pursuant to [§] 10(a)(3)." *See Tempo Shain*, 120 F.3d at 18, 20 ("[E]xcept where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review."); *see also Fid. Brokerage Servs.*, 2019 WL 1177881, at *2 (declining to vacate an arbitration award where a panel had rejected the proffer of rebuttal expert testimony).

### B. *The Panel's Application of Evidentiary Rules*

SLS also argues that vacatur is appropriate under § 10(a)(3) because the Panel arbitrarily applied evidentiary rules, thereby depriving SLS of a fundamentally fair hearing. (*See* SLS's Opp'n 19–20.) In support of this argument, SLS identifies several instances in which it claims the Panel acted unfairly in ways that improperly prejudiced SLS's case. (*See* SLS's Opp'n 2–11.) For example, SLS asserts that, partway through SLS's case-in-chief and "without any

12

advance notice, the Panel implemented rules that prevented SLS from presenting its case" by excluding certain portions of an expert's testimony. (*See id.* at 9; *see also* 6/27/18 Hollander Decl. Ex. 5.) In making this argument SLS ignores its own conduct during the hearing which led the Panel to implement rules to insure appropriate notice was given concerning the testimony and evidence being presented by the parties while also insuring the efficient presentation of that evidence. The Panel instituted the change in evidentiary rules in response to SLS's conduct related to its presentation of an expert's testimony whereby it provided a revised expert report and additional documents on which the expert relied the day before he was scheduled to testify. (*See* 7/27/18 Delaney Decl. Exs. G–J.) In response to SLS's attempt to essentially sandbag CRT, although the Panel denied CRT's motion to strike the report and testimony entirely, it issued an order informing the parties that, moving forward, the Federal Rules of Evidence would govern expert witness testimony, and warned SLS that the "full range of sanctions available to the panel may be imposed" for any "additional noncompliance." (6/27/18 Hollander Decl. Ex. 5.) The Panel later explained that they made the decision to apply the Federal Rules in an attempt to make the proceedings more fair and to "stop trial by ambush" and "give the other party notice." (*See* 7/27/18 Delaney Decl. Ex. P, at 3897:17–3898:9.)

The actions taken by the Panel with regard to evidentiary issues were entirely appropriate since the FINRA rules provide arbitrators with discretion in the application of evidentiary rules, *see* FINRA Rule 12604(a) (giving the Panel the authority to "decide what evidence to admit" and stating that the Panel "is not required to follow state or federal rules of evidence"), and "what qualifies as unfairly preventing one party from presenting its case for the purpose of vacating an award is the *preclusion* of pertinent evidence or discovery—not procedural rulings that may increase the difficulty in presenting one's case," *Trina Solar US, Inc. v. JRC-Servs. LLC*, 229 F.

Supp. 3d 176, 192 n.14 (S.D.N.Y. 2017). I have reviewed each of the alleged instances of purported unfair conduct identified by SLS and—like the Panel's decision related to the late disclosure of expert materials discussed above—I find that none of them rises to the level of misconduct demonstrating that the procedure was fundamentally unfair, and therefore vacatur is not warranted.[12] *See Tempo Shain*, 120 F.3d at 20; *see also Bell Aerospace Co. Div. of Textron, Inc. v. Local 516, Int'l Union, UAW*, 500 F.2d 921, 923 (2d Cir. 1974) ("In handling evidence an arbitrator need not follow all the niceties observed by the federal courts."); *Rai v. Barclays Capital Inc.*, 739 F. Supp. 2d 364, 371 (S.D.N.Y. 2010), *aff'd*, 456 F. App'x 8 (2d Cir. 2011) (noting that § 10(a)(3) "has been narrowly construed so as not to impinge on the broad discretion afforded to arbitrators to decide what evidence should be presented").

### C. *The Panel's Award of Attorneys' Fees*

SLS also argues that I should vacate the award of attorneys' fees and costs to CRT because the Panel's decision did not conform to established New York law. (*See* SLS's Opp'n 20–25.) Under a "severely limited" judicially-created doctrine, a court may vacate an arbitration award only if it "manifestly disregarded the law." *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 208 (2d Cir. 2002). The Second Circuit has held that this doctrine "involves at least three inquiries." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S,* 333 F.3d 383, 389 (2d Cir. 2003). First, a court "must consider whether the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrators." *Id.* at 389–90. Second, in applying that clear law to the facts, a court must consider whether any "justifiable ground for the decision can be inferred from the facts of the case." *Id.* at 390. For this inquiry, a court "is

---

[12] I note that, although the Panel's decision was unexplained, one of the Panel members provided a thorough and thoughtful explanation of his dissent. (*See* 6/27/18 Hollander Decl. Ex. 1, at 10–63.) Although the dissenting Panel member disagreed with the majority on the merits, tellingly, his dissenting opinion did not call into question the procedural fairness of the proceeding. (*See id.*)

14

forbidden to substitute its own interpretation [of the relevant law and facts] even if convinced that the arbitrator's interpretation was not only wrong, but plainly wrong." *Local 1199, Drug, Hosp., & Health Care Emps. Union v. Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir. 1992) (quoting *Chicago Typographical Union No. 16 v. Chicago Sun–Times, Inc.*, 935 F.2d 1501, 1505 (7th Cir. 1991)). Third, even if there is no possible factual ground to justify the deviation from a clear legal rule, a court will vacate an award only if, as a subjective matter, the arbitrator actually knew of the applicable legal rule and its applicability to the case. *See Duferco*, 333 F.3d at 390.

In pertinent part, the Engagement Letter from SLS to CRT states:

> [W]e agree to indemnify and hold you harmless from and against all losses, claims, damages or liabilities . . . related to or arising out of such engagement or your role in connection therewith, and will reimburse you for all expenses (including counsel fees and expenses) as they are incurred by you in connection with investigating, preparing for or defending any such action or claim, whether or not in connection with pending or threatened litigation in which you are a party.

(5/3/18 Delaney Decl. Ex. B.) SLS argues that controlling New York law holds that such generic indemnification clauses can only be read to apply to third-party suits if they contain language "demonstrating the parties' 'unmistakably clear' intent to indemnify against first-party losses." (*See* SLS's Opp'n 21–23 (citing *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 415 (S.D.N.Y. 2011), *Hooper Assocs, Ltd. v. AGS Computs., Inc.*, 74 N.Y.2d 487, 491–92 (1989), and *Haynes v. Kleinewefers & Lembo Corp.*, 921 F.2d 453, 456 (2d Cir. 1990).) SLS claims that it made the Panel aware of that "uncontroverted legal precedent" in its September 22, 2017 brief. (*See id.* at 23; *see also* 6/27/18 Hollander Decl. Ex. 22.)

CRT responds that the indemnification clause must be read in conjunction with another clause in the Engagement Letter, which states:

> We also agree that neither you nor any such affiliate, director, agent, employee or controlling person shall have any liability (whether direct or indirect, in contract, tort, or otherwise) to us or any person asserting claims on behalf of or in our right

15

for or in connection with such engagement except for any such losses, claims, damages, liabilities or expenses incurred by us which are finally judicially determined to have resulted solely from your bad faith or gross negligence in performing the services that are the subject of the separate letter agreement.

(5/3/18 Delaney Decl. Ex. B.) CRT's arguments to the Panel and to me rely on *Gramercy Advisors, LLC v. Coe*, No. 13-CV-9069 (VEC), 2014 WL 4197370, at *4 (S.D.N.Y. Aug. 25, 2014), which CRT states is the "only case addressing an engagement agreement containing both an indemnity and exculpation clause under New York law," (CRT's Reply 21). In *Gramercy Advisors*, the Court held that an agreement with both such clauses can provide indemnity for first-party claims under New York law. 2014 WL 4197370, at *5. SLS acknowledges that the *Gramercy Advisors* court made a "finding of one plausible reading" of these types of clauses in combination, (SLS's Reply 2 n.2),[13] but states that I should ignore the case because it is "an unreported decision that has never been cited by . . . any . . . court for the proposition for which [CRT] cite[s] it[,]" (*id.* at 1–2). This argument is off the mark and misapplies the standard that I am obligated to follow.

The doctrine invoked by SLS "is considered one of last resort and its use has been limited to only those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent." *Oldcastle Precast, Inc. v. Liberty Mut. Ins. Co.*, No. 7:16-cv-01914(NSR), 2019 WL 1171564, at *4 (S.D.N.Y. Mar. 12, 2019) (internal quotation marks omitted). Moreover, "even if an arbitrator makes mistakes of fact or law, [I] may not disturb an award so long as [the Panel] acted within the bounds of [their] bargained-for authority." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 532 (2d Cir. 2016). "[A]n arbitration award is to be confirmed if there is even a 'barely colorable

---

[13] "SLS's Reply" refers to the Respondent's Reply Memorandum of Law in Further Support of Its Petition to Vacate the Arbitration Award, dated August 24, 2018. (Doc. 50.)

16

justification' for the decision." *Drywall Tapers & Pointers of Greater N.Y. Local Union 1974, IUPAT, AFL-CIO v. Visual Acoustics, LLC*, No. 17-CV-5431 (JGK)(KHP), 2018 WL 1596196, at *2 (S.D.N.Y. Mar. 29, 2018) (quoting *U.S. Steel & Carnegie Pension Fund v. Dickinson*, 753 F.2d 250, 252 (2d Cir. 1985)).

Because at least one court has accepted the legal arguments made by CRT, *see Gramercy Advisors*, 2014 WL 4197370, at *4, the legal standard articulated by SLS cannot be considered "clear, and in fact explicitly applicable to the matter before the [Panel]," *Duferco*, 333 F.3d at 390. To the contrary, the *Gramercy Advisors* opinion indicates that there is, at minimum, a "barely colorable justification" for the Panel's decision, *see Dickinson*, 753 F.2d at 252, and therefore reliance on the logic of that decision in reading the clauses at issue was not the type of "egregious impropriety" that would indicate a "manifest disregard of the law," *Duferco*, 333 F.3d at 389. Under these circumstances, vacatur is not appropriate. *Id.*

Finally, SLS argues that the Panel exceeded their powers by awarding attorneys' fees incurred outside the arbitration proceeding, justifying vacatur under § 10(a)(4). Section 10(a)(4) of the FAA permits a court to vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). The Second Circuit has "consistently accorded [§ 10(a)(4)] the narrowest of readings." *Anthony v. Affiliated Comput. Servs., Inc.*, 621 F. App'x 49, 50–51 (2d Cir. 2015) (summary order) (internal quotation marks omitted). Whether the arbitrator correctly decided an issue is not the question before the reviewing court. *See id.* at 52 ("[W]e do not consider whether the arbitrators correctly decided the issue." (internal quotation marks omitted)).

SLS argues that "[n]o reasonable interpretation of the language in the [Engagement Letter] could conclude that SLS contracted to indemnify CRT in a dispute between themselves." (SLS's Opp'n 24.) However, "[b]ecause the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) (internal quotation marks omitted). Here, the award of attorneys' fees obviously "draw[s] its essence from the [Engagement Letter]" and does not "simply reflect the [Panel]'s own notions of . . . justice." *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000) (internal quotation marks omitted). Section 10(a)(4) therefore does not apply.

In the alternative, pursuant to § 11(b), SLS argues that "the award should be modified to remove any and all fees incurred in actions other than the Arbitration which the Panel did not have the authority to award." (SLS's Opp'n 24.) Because SLS insisted that the Panel issue an unexplained decision, the Panel did not indicate whether it was awarding attorneys' fees incurred outside of the arbitration proceeding before it, (*see* 6/27/18 Hollander Decl. Ex. 1), and SLS does not identify any evidence in the record indicating that the Panel awarded attorneys' fees incurred outside of that proceeding, (*see* SLS Opp'n 24–25). I therefore need not consider whether the Panel "awarded upon a matter not submitted to them," *see* 9 U.S.C. § 11(b), and find that the award should not be vacated.

## V. Conclusion

For the reasons stated above, the petition to confirm the arbitration award is GRANTED and Respondent's cross-petition to vacate the award is DENIED. The Clerk of Court is directed to terminate the open motions at Documents 31 and 32 and close the case.

SO ORDERED.

Dated: March 31, 2019
     New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge